THE STATE OF SOUTH CAROLINA

THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State,       
Respondent,
 
 
 

v.

 
 
 
Norman E. Pauling,       
Appellant.
 
 
 

Appeal From Florence County
B. Hicks Harwell, Jr., Circuit Court Judge

Unpublished Opinion No. 2003-UP-761
Heard December 11, 2003  Filed December 
 30, 2003

REVERSED AND REMANDED

 
 
 
Assistant Appellate Defender Robert M. Pachak, of Columbia, 
 for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney 
 General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson 
 and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; 
 and Solicitor Edgar L. Clements, III, of Florence, for Respondent.
 
 
 

PER CURIAM:     Norman E. Pauling appeals from a criminal conspiracy 
 conviction, asserting that the trial judge erred in increasing his sentence 
 to match his co-defendant after his attorney inquired into the discrepancy between 
 the two sentences.  We reverse and remand.
FACTS
Norman E. Pauling and co-defendant Tyron Silva were charged with 
 breaking and entering a motor vehicle, criminal conspiracy, possession of burglary 
 tools, and grand larceny.  Pauling and Silva were represented by the same defense 
 counsel at trial.  Both men pled guilty to criminal conspiracy.  At sentencing, 
 the trial judge announced the following to Paulings co-defendant:

Mr. Silva criminal conspiracy five years suspended upon the service 
 [of] three years.  And you thereafter placed on probation for a period of five 
 years.  Neither one of you are going the youthful offender.  Im gone send you 
 behind the wall with those who many of them are there for life.  Life now means 
 life gone die in prison or doing long term.  I hope you [wont] associate with 
 them.  You [wont] choose them for your role models.
You thereafter, Mr. Silva, be place[d] on probation for five years.  
 Special condition of your probationboth of you and all of you gone have to 
 be gainfully employed.  Pay that restitution and Ill consider putting yougetting 
 you a job and putting you in the restitution center.

The trial judge then addressed the following statements to
Pauling:

Mr. Pauling, the sentence of the Court is you be confined to the department 
 of corrections for two years.  Five years suspended to two years active service.  
 With special condition of your probation that you so be as the others individually 
 and collectively responsible for full restitution for that amount to be determined.  
 I understand from what Mr. Russo tells me that is an amountplease listen to 
 me, Mr. Russo.  I dont know what the amount.  You told me that hes got lost 
 earnings.  Hes got a number of things.  I like there to be a hearing to determine 
 the amount of restitution.  Im sure it exceeds $1,380.

Shortly thereafter, during the same hearing, the defense attorney 
 representing Silva and Pauling inquired as to why Silva was given a harsher 
 sentence than Pauling when both had pled guilty to the same crime:

[Defense Attorney]:  I just had one question.  This is not 
 arguing with the sentence.
The Court:  I understand.
[Defense Attorney]:  They may have a question about why when they plead to the 
 same thing and neithercould you explain why one[]s having a three [and] the 
 other two?
The Court:  No, sir.  I think they know.
[Defense Attorney]:  Well, I do have one thing I need for 
 you to know.  Record for the assault and battery on Mr. Silva wasnt him.  That 
 was his twin brother if that made a difference.  I just wanted the Court to 
 be aware that that assault and battery charge in the city court was not this 
 young man.
The Court:  He entered a plea and when a person enters a 
 plea, that indicates to me that first step toward rehabilitation acceptance 
 of responsibility.  And Ive given him the benefit of entering a plea.  Mr. 
 Pauling is 18.  Mr. Silva is 19.  Maybe, Im an optimist.  I dont see Mr. Silva 
 as a follower.  I see him in what he said to the Court as rationale not impressed 
 with his explanation how he came to be involved with this crime.  I dont understand 
 it.  But thats my decision.
[Defense Attorney]:  I understand that and respect that, 
 Your Honor.  I need an explanation for the benefit--
The Court:  I understand.
[Defense Attorney]:  And its just I felt their explanations 
 were exactly the same.
The Court:  I never seen not even identical twins two people 
 just alike.

After discussing credit for time served and lifting outstanding bench 
 warrants, the following exchange took place between the trial judge and Paulings 
 attorney:

The Court:  Reconsidering the sentence of Mr. Pauling[,] 
 five years suspended upon the service of three and that reason is obvious.  
 Hes presumed to be innocent.  These fellows are not choir boys.
[Defense Attorney]:  I dont think I made a motion for reconsideration.
The Court:  I have reconsidered the sentence of Mr. Pauling.  
 Five years suspended upon the service of three.  Treat them all equally and 
 feed all from the same spoon.

DISCUSSION
I.  Error Preservation
The State contends that Pauling failed to preserve this issue for appeal.  
 We disagree.
To preserve a challenge to sentencing, an appellant must raise the issue to 
 the trial court.  State v. Johnston, 333 S.C. 459, 510 S.E.2d 423 (1999); 
 see also State v. Shumate, 276 S.C. 46, 275 S.E.2d 288 (1981) 
 (stating that failure to timely object to or seek modification of sentence in 
 trial court precludes objection for first time on appeal).  While we recognize 
 the foregoing as the general rule, we allow this rule to be relaxed where the 
 tone and tenor of the trial judges remarks are such that any objection would 
 have been futile.  State v. Thomason, 355 S.C. 278, 289, 584 S.E.2d 
 143, 148 (Ct. App. 2003); see also State v. Pace, 316 S.C. 71, 
 74, 447 S.E.2d 186, 187 (1994) (As to counsels failure to raise an objection, 
 the tone and tenor of the trial judges remarks concerning her gender and conduct 
 were such that any objection would have been futile.).  
In the instant case, Paulings trial attorney questioned the harsher sentence 
 received by Silva, Paulings co-defendant, only to have Paulings sentence increased.  
 Having had his benign inquiry yield such a detrimental response, we rule that 
 it was not incumbent upon defense counsel to harass the judge by parading 
 the issue before him again.  State v. McDaniel, 320 S.C. 33, 37, 462 
 S.E.2d 882, 884 (Ct. App. 1995).  It would be folly to require the imperilment 
 of ones clients for the sake of issue preservation.
II.  Elevated Sentence
In State v. Higgenbottom, 
 344 S.C. 11, 542 S.E.2d 718 (2001), our Supreme Court vacated a sentence the 
 defendant received in a subsequent hearing.  One day after his guilty plea, 
 Higgenbottom exercised his right to move for reconsideration of his probationary 
 sentence.  The motion was brought before the same trial court which had imposed 
 the sentence, and the trial court had the same information before it as it had 
 the day before.  The court denied Higgenbottoms request to reduce the sentence.  
 Instead, the judge increased the probationary sentence by six months.  The Supreme 
 Court vacated the increased sentence and reinstated the original sentence because 
 the trial court failed to put on the record objective reasons for the harsher 
 sentence.
Like Higgenbottom, both 
 sentences here were given by the same judge and no relevant facts changed between 
 the first sentencing and the second sentencing.  The sentencing judge did not 
 gather a fuller appreciation of the nature and extent of the crimes charged 
 in the moments that passed between Paulings initial sentence and reconsidered 
 sentence because no new evidence had been introduced.  Alabama v. Smith, 
 490 U.S. 794, 801 (1989).  Contrary to Higgenbottom, Paulings trial 
 counsel never made a motion to have the sentence reconsidered.  He merely inquired 
 into the reasoning behind the discrepancy between the two defendants sentences.  
 Thus, the trial court reconsidered the original sentence on its own.  This was 
 error.  We therefore reinstate Paulings original sentence.
III.  Sentencing Procedure
The State maintains Pauling was not sentenced by the judges oral pronouncement.  
 Rather, the State claims the actual sentencing occurred at some later point.  
 We disagree.
In civil actions, an order is not final until it is written and entered 
 by the clerk of court.  Bowman v. Richland Meml Hosp., 335 S.C. 88, 
 515 S.E.2d 259 (Ct. App. 1999).  Until an order is written and entered by the 
 clerk of court, the judge retains discretion to change his mind and amend his 
 ruling accordingly.  Id.  Even after orally announcing his decision, 
 a trial judge presiding over a civil action can modify his decision at any point 
 prior to filing.  Bayne v. Bass, 302 S.C. 208, 210, 394 S.E.2d 726, 727 
 (Ct. App. 1990) (Even if as contended by defendant the trial Judge granted 
 an oral divorce to plaintiff such pronouncement is not a final ruling on the 
 merits nor is it binding on the parties until it has been reduced to writing, 
 signed by the Judge and delivered for recordation.).  We hold that the civil 
 rule does not apply in criminal proceedings.
In State v. Wheeler, 498 P.2d 205 (Ariz. 1972), the court 
 stated that a sentence orally pronounced by the court and entered in the minutes 
 is a complete and valid judgment that the trial court cannot subsequently vacate 
 and replace with a more severe judgment without violating the prohibition against 
 double jeopardy.  Id.  The defendant in that case was convicted on a 
 two-count indictment.  The court imposed sentences of five to six years imprisonment 
 . . . on each charge.  Id. at 206.  Upon hearing the sentence, the defendant 
 attacked his attorney.  At a proceeding two days after the imposition of the 
 original sentence, the trial judge attempted to re-sentence the defendant, 
 formally declaring a sentence of not less than five nor more than six years 
 on the robbery and not less than 24 nor more than 25 years on the attempted 
 rape, the sentences to run consecutively.  Id. at 206.  The Supreme 
 Court of Arizona concluded the attempted re-sentencing was invalid.  Id. 
 at 208.  The court found the defendant had entered upon the execution of his 
 sentence at the moment the original judgment was pronounced and entered on 
 the minutes of the court, so that any subsequent attempt to increase the original 
 valid sentence violated double jeopardy.  Id. at 208; see also 
 State v. Fertterer, 860 P.2d 151, 154 (Mont. 1993) (Once a valid sentence 
 has been pronounced, the court imposing that sentence has no jurisdiction to 
 modify it, except as provided by statute.).
The protections afforded a person accused of a crime are familiar hallmarks 
 of our judicial systemto know the charge against him, to be represented by 
 counsel, to confront witnesses, to have an impartial trial.  We reject the contention 
 that the sentencing sheet controls when a defendant has been sentenced.  Where 
 the liberty of a defendant is concerned, and he is to be sentenced by the judge, 
 he has a right that everything appertaining to the case, in the way of evidence 
 affecting the case, be open and above board and public.  State v. Simms, 
 131 S.C. 422, 424, 127 S.E. 840, 840 (1925).
In its brief, the State writes that requiring the trial court to 
 impose the first sentence that it verbalizes during the course of a sentencing 
 hearing is not practical.  A judge is not bound to mistakenly uttered words.  
 The authority of a trial judge to correct clerical errors is well established.  
 Unless authorized by statute, once a final judgment has been rendered in a 
 criminal case, the trial court ordinarily loses jurisdiction to alter its final 
 judgment and sentence.  24 C.J.S. Criminal Law § 1544 (1989).  Ordinarily, 
 as an exception to this general rule, a trial court presiding over a criminal 
 prosecution may correct clerical mistakes in its own judgments.  Id.  
 Otherwise, a sentence imposed subsequent to a validly imposed one is a nullity.  
 Id.  We reject the argument and contention by the State that a defendant 
 may be subjected to a different sentence contained in a written order issued 
 at a later time.
CONCLUSION
Based on the foregoing, the decision of the trial judge is
REVERSED AND THE CASE IS REMANDED FOR SENTENCING.
GOOLSBY, ANDERSON, and STILWELL, JJ., concur.